# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| ANASTASIA MALHOTRA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:24-cv-12967 |
| ) | |
| v. ) | |
| ) | |
| THE LAMBS FARM, INC., ) | |
| ) | |
| Defendant. ) | |
| ) | |

## COMPLAINT

**NOW COMES** Anastasia G. Malhotra ("Plaintiff"), by and through her undersigned counsel, complaining of The Lambs Farm, Inc. ("Defendant") as follows:

## NATURE OF PLAINTIFF'S CLAIMS

1. Plaintiff brings this action seeking redress for violations of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e *et seq.* ("Title VII"), the Pregnancy Discrimination Act of 1978 ("PDA"), 42 U.S.C. §2000e *et seq.*, and unlawful retaliation.

2. Plaintiff alleges that Defendants violated Title VII and the PDA by unlawfully discriminating against Plaintiff on the basis of her sex (female) and pregnancy and then retaliating against her for opposing gender and pregnancy discrimination.

## JURISDICTION AND VENUE

3. This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 as Title VII and the PDA are federal statutes.

4. Venue in this judicial district is proper pursuant to 28 U.S.C. §1391(b)(2) as the events giving rise to Plaintiff's claims occurred within this judicial district.

## ADMINISTRATIVE PREREQUISITES

5. All conditions precedent have been satisfied.

6. Plaintiff filed a charge of discrimination against Defendant with the Equal Employment Opportunity Commission ("EEOC"). *See* attached Exhibit A.

7. Plaintiff received a Notice of Right to Sue from the EEOC as to Defendant and Plaintiff filed this action within ninety (90) days of Plaintiff's receipt of the EEOC's Notice of Right to Sue. *See* attached Exhibit B.

## THE PARTIES

8. Plaintiff is a natural person, over 18-years-of-age, who at all times relevant resided in Mundelein, Illinois.

9. Defendant is a corporation facility offering services for individuals with developmental and intellectual disabilities including residential care.

10. Defendant maintains a principal place of business in Libertyville, Illinois.

11. At all times relevant, Defendant had at least fifteen employees, was an "employer" as defined by Title VII, and was engaged in an industry affecting commerce within the meaning of Title VII, 42 U.S.C. §2000e(b).

## BACKGROUND FACTS

12. Plaintiff was employed by Defendant as a residential manager from September 2023, until she was unlawfully terminated on October 23, 2024.

13. Plaintiff, as a pregnant female, is a member of a protected class or classes.

14. During Plaintiff's employment, Defendant subjected Plaintiff to different terms and conditions of employment than others not within her protected class (non-pregnant females and males in general).

15. In or around March 2024, while working as a manager at The Lambs Farm, Inc., Plaintiff was expected to fill vacant shifts whenever other employees were unavailable.

16. This responsibility forced Plaintiff to work 14-15 consecutive days without a break.

17. When Plaintiff expressed concerns about the demanding workload, she met with her supervisor, who questioned her ability to manage the role due to her pregnancy and the impending responsibilities of being a new mother.

18. In or around April 2024, Plaintiff's direct supervisor, Chris Woods (Associate Director of Residential, non-pregnant), began speaking to Plaintiff about her job changing.

19. Chris would allude to the fact that Plaintiff's job would be different after she returned from maternity leave.

20. Chris would frequently tell Plaintiff, "Oh, your job is going to be changing," and "We're restructuring residential."

21. When Plaintiff received no new job description or further details, she became concerned that her employment was at risk and began asking for a new job description.

22. On or around June 10, 2024, Plaintiff met with HR Coordinator Jason Shaffer (non-pregnant).

23. Plaintiff raised concerns about multiple issues, specifically Chris Woods' above discriminatory actions towards Plaintiff as a pregnant worker along with Plaintiff's issues about the job description.

24. Plaintiff also conveyed issues with managing coworkers who were under the influence of Chris Woods' discriminatory practices on the basis of her pregnancy, detailing how this dynamic was creating a hostile work environment for Plaintiff and making it near impossible for Plaintiff to manage them effectively.

25. In or around June 28, 2024, after repeatedly asking for a new job description, Plaintiff's direct supervisor Chris Woods, gave Plaintiff a new stripped-down job description detailing vague responsibilities.

26. This modified description lacked clarity, and Plaintiff was left unsure of her exact duties.

27. Additionally, Plaintiff was expected to complete tasks due that week that she was not trained on.

28. Plaintiff emailed HR about this and specifically requested a meeting with Michael Diaz (Director of the Department, non-pregnant).

29. HR scheduled a meeting on or around July 9, 2024 with Plaintiff to go over the job description.

30. Chris made it seem like Plaintiff's entire team was being restructured but Plaintiff noticed that her duties were heavily changed compared to the minimal changes made with her coworker's jobs.

31. On or around July 9, 2024, Plaintiff met with Michael Diaz, Chris Woods, Julie (HR) and Jason Shaffer (HR Coordinator).

32. Plaintiff's new job description was reviewed during this meeting and Plaintiff was assured that she was still a salaried worker.

33. Additionally, Michael told Plaintiff that she "should just be lucky that [she has] a job" when she was trying to express her concerns about her experience.

34. He also told Plaintiff not to focus on the past.

35. Additionally, Plaintiff was upset that Chris was at this meeting because she specifically requested only to meet with Michael.

36. In or around August 2024, Plaintiff contacted the EEOC and IDHR *pro se* and was scheduled for an interview with an investigator.

37. On or around August 20, 2024, Plaintiff commenced her maternity leave.

38. The very next day, Plaintiff's employment status was altered without her knowledge.

39. Upon returning from maternity leave on or around October 14, 2024, Plaintiff was informed that she had been reclassified from a salaried to an hourly employee.

40. This change was submitted on or around August 20, 2024, one day after Plaintiff left on maternity leave.

41. Plaintiff was effectively demoted because she took maternity leave in accordance with her protected class status (pregnant).

42. Further, Plaintiff's direct supervisor did not inform Plaintiff of this change, rather, this change was something Plaintiff discovered upon her return.

43. On or around October 17, 2024, Plaintiff had a meeting with HR, where she was confronted about baseless performance issues.

44. These concerns specifically referenced incidents that occurred during Plaintiff's pregnancy, prior to her maternity leave.

45. These write-ups were issued in a clear effort to retaliate against Plaintiff for taking maternity leave.

46. On or around October 18, 2024, Plaintiff raised her concerns about the classification change and retaliation with the HR department and the CEO.

47. In response, Plaintiff was informed on or around October 21, 2024, that a follow-up meeting was scheduled, and they mentioned seeking legal counsel.

48. On or around October 23, 2024, Plaintiff was terminated from her position.

49. During Plaintiff's termination meeting, the Executive Director, Kathy Bursh (non-pregnant) and an HR Representative stated that Plaintiff was being let go due to "refusal to clock in and clock out" and "refusal to perform job duties."

50. However, this was baseless as Plaintiff never refused her job duties and consistently expressed confusion over her new classification and compensation.

51. When Plaintiff repeatedly asked if she was being terminated, Kathy responded with, "we're done here," and instructed Plaintiff to collect her things and leave.

52. Based on Plaintiff's employment record and timing relating to her requests and/or complaints, there could be no question that Plaintiff's termination was based on her pregnancy and in retaliation for opposing the blatant gender and pregnancy discrimination

53. At all times relevant, Plaintiff met or exceeded Defendant's performance expectations.

## DAMAGES

54. As a result of Defendant's conduct, Plaintiff suffered damages, including: loss of employment, loss of income, loss of employment benefits, mental anguish, financial distress, emotional distress, humiliation, and loss of enjoyment of life.

## COUNT I
### Violations of Title VII of the Civil Rights Act of 1964
### (Sex-Based Discrimination)

55. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

56. By virtue of the conduct alleged herein, Defendant intentionally discriminated against Plaintiff based on Plaintiff's sex in violation of the Title VII.

57. Plaintiff, as a pregnant female, is a member of a protected class or classes.

58. Plaintiff met or exceeded performance expectations.

59. Plaintiff was treated less favorably than similarly situated employees outside of Plaintiff's protected class (non-pregnant females and males in general).

60. Specifically, but for Plaintiff's pregnancy, Plaintiff's employment would not have been terminated.

61. As a result of Defendant's conduct, Plaintiff suffered an adverse employment action in the form of termination.

62. Defendant's conduct in terminating Plaintiff's employment based on her gender and pregnancy demonstrates that Defendant treats pregnant females less favorably than individuals outside of Plaintiff's protected class (non-pregnant females and males in general).

63. Defendants acted in willful and/or reckless disregard of Plaintiff's protected rights.

64. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

## COUNT II
**Violations of Title VII of the Civil Rights Act of 1964 and the Pregnancy Discrimination Act**
**(Retaliation)**

65. Plaintiff repeats and re-alleges all previous paragraphs as if fully stated herein.

66. As set forth above, Plaintiff engaged in protected activity by opposing gender and/or pregnancy discrimination to Defendant.

67. In response to Plaintiff's opposition of gender and/or pregnancy discrimination, Defendant's terminated Plaintiff's employment.

68. Plaintiff suffered an adverse employment action in retaliation for engaging in a protected activity in the form of termination.

7

69. Accordingly, Defendant unlawfully retaliated against Plaintiff for engaging in protected activity in violation of Title VII and the PDA.

70. As set forth above, Plaintiff suffered damages as a result of Defendant's conduct.

## RELIEF REQUESTED

**WHEREFORE**, Plaintiff requests the following relief:

a. A judgment in favor of Plaintiff and against Defendants;

b. Back pay with interest;

c. Payment of interest on all back pay recoverable;

d. Front pay;

e. Compensatory and punitive damages;

f. Reasonable attorney's fees and costs;

g. Pre-judgment interest if applicable; and

h. Any further relief as the Court deems just and proper

## DEMAND FOR JURY TRIAL

Pursuant to Fed. R. Civ. P. 38(b), Plaintiff demands a trial by jury.

Dated: December 17, 2024                    Respectfully submitted,

/s/ *Peyton M. Paschke, Esq.*
Peyton M. Paschke, Esq.
SULAIMAN LAW GROUP LTD.
2500 S. Highland Avenue, Suite 200
Lombard, Illinois 60148
Phone (630) 581-5450
ppaschke@sulaimanlaw.com
*Attorney for Plaintiff*